# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

MONROE GUARANTY INSURANCE )
COMPANY, et al., )
 )
    Plaintiffs, )
 ) Case No.: 2:17-cv-01630-JHE
v. )
 )
PINNACLE MANUFACTURING, LLC, et )
al., )

    Defendants.

## MEMORANDUM OPINION[1]

Plaintiffs Monroe Guaranty Insurance Company and FCCI Insurance Company (collectively "Plaintiffs") initiated this declaratory judgment action against Defendants Pinnacle Manufacturing, LLC ("Pinnacle Mfg."), Joby Satterfield, Jason Satterfield (collectively the "Pinnacle Defendants"), and Zach Smith to determine rights and obligations under a Commercial General Liability ("CGL") Policy and an Umbrella Policy issued to the Pinnacle Mfg. (Doc. 1). The Pinnacle Defendants are defendants in a state court lawsuit brought by Zach Smith, *Smith v. Pinnacle Manufacturing, LLC,* et al., Civil Action No. CV-2017-900095, currently pending in the Circuit Court in Blount County, Alabama (the "Underlying Action"). Plaintiffs assert that the CGL and Umbrella Policies do not provide coverage for the type of damages alleged in the Underlying Action and seek a declaration from this Court that there is no coverage. (*See* docs. 1, 23, & 24).

Plaintiffs filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 18).

1

Procedure 12(c) and a brief in support thereof. (Docs. 23 & 24). Upon receipt of the motion, the undersigned set a deadline for any opposition to the motion to be filed. (Doc. 25). That deadline has passed, and no opposition to the motion for judgment on the pleadings was filed. Accordingly, having considered Plaintiffs' motion and brief, as well as the applicable law, the motion for judgment on the pleadings (doc. 23), is **GRANTED**.

## I. Standard of Review

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999). "When reviewing judgment on the pleadings, we must take the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Id*. "If upon reviewing the pleadings it is clear that the [moving party] would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002). However, on a motion for judgment on the pleadings, the court is not allowed to consider any matter that is outside of the pleadings. If matters outside the pleadings are presented and are not excluded by the Court then the motion must be treated as one for summary judgment. FED. R. CIV. P. 12(d).

## II. Relevant Facts

### A. The Underlying Action

The Underlying Action is generally premised upon Pinnacle Mfg.'s termination of Smith as an independent sales agent and his alleged economic damages flowing from that termination. (*See* doc. 1-1). Specifically, Smith alleges he and Pinnacle Mfg. entered into an independent sales

2

agreement in January 2015, and in December 2015, Pinnacle Mfg. sent Smith a notice of termination advising him that their agreement would be terminated effective January 29, 2016. (*Id*. at ¶¶ 6, 12-13). Smith further alleges Pinnacle Mfg. improperly solicited business from his customers following the termination notice and failed to pay compensation from revenues generated from his customers. (*Id*. at ¶¶ 18-19). Based on these factual allegations, Smith alleges six causes of action against the Pinnacle Defendants, including: Count I Intentional Interference with a Business Relationship, Count II Suppression, Count III Wantonness, Count IV Unjust Enrichment, Count V Open Account, and Count VI Breach of Contract. (*Id*.).

Count I Intentional Interference with a Business Relationship alleges the Pinnacle Defendants "intentionally interfered with the business relationship between [Smith] and [Smith]'s account customers" and Smith "has incurred damages as a result of the [Pinnacle] Defendants' unlawful interference." (Doc. 1-1 at ¶¶ 25-26).

Count II Suppression of Material Facts alleges:

> [The Pinnacle Defendants "breached their duty and defrauded [Smith] by representing that [Smith] would continue as an independent contractor for Defendant Pinnacle. Defendants suppressed the material facts of refusing to pay [Smith] for the orders and customers relationships developed by [Smith]. Said suppression of material facts and fraud were committed negligently, recklessly, wantonly and/or willfully or with the intent to defraud and deceive [Smith].
> 
> ….
> 
> As a proximate cause of the fraud and suppressed material facts by Defendant, [Smith] has suffered damages. [Smith] has suffered loss of income, stress, anxiety, and emotional and mental distress.

(Doc. 1-1 at ¶¶ 30, 32).

Count III Wantonness alleges the Pinnacle Defendants "were conscious that the Independent Sales Representative Agreement would be terminated that same day by Pinnacle and Jason Satterfield" and "failed to disclose to [Smith] that [the Pinnacle] Defendants were

3

terminating the Independent Sales Representative Agreement." (Doc. 1-1 at ¶¶ 35, 36). Smith alleges he was "caused to suffer damages, including loss of revenue, increased business costs and damages to reputation and character" due to the Pinnacle Defendants' wanton conduct. (*Id*. at ¶ 38).

Count IV Unjust Enrichment alleges the Pinnacle Defendants "have been unjustly enriched by receiving compensation and/or financial benefit from orders and/or sales from [Smith]'s customers." (Doc. 1-1 at ¶ 43).

Count V Open Account alleges the Pinnacle Defendants have failed to pay the amounts owed for orders and sales from Smith's customers after January 29, 2016. (Doc. 1-1 at ¶ 48).

Count VI Breach of Contract alleges Pinnacle Mfg. breached the Independent Sales Representative Agreement by failing to perform and pay compensation to Smith for orders known and/or reasonably anticipated or accounted for. (Doc. 1-1 at ¶ 51).

Smith seeks compensatory and punitive damages for all counts, except Counts V and VI for which he only seeks compensatory damages. (Doc. 1-1)

B. The Policies

Monroe Guaranty issued a CGL Policy on an occurrence basis for the period of April 15, 2015 through April 15, 2016. (*See* doc. 1-2). FCCI Insurance issued the Umbrella Policy on an occurrence basis for the period of April 15, 2015 through April 15, 2016. (*See* doc. 1-3).

The CGL Policy's principal form is Form CG00011207, titled "COMMERCIAL GENERAL LIABILITY COVERAGE FORM." In pertinent part, the CGL Policy provides:

> SECTION 1 – COVERAGES
> COVERAGE A - BODILY INJURY AND PROPERTY
> DAMAGES LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . .

(*See* doc. 1-2 at 105).

The Umbrella Policy's principal form is Form CU00011207, titled "COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM." In pertinent part, the Umbrella Policy provides:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted . . . . However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory".

      . . . .

(*See* doc. 1-3 at 13).

The Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a

person, including death resulting from any of these at any time." (Docs. 1-2 at 117 & 1-3 at 26). The Policies define "property damage" as "physical injury to or destruction of real property or tangible personal property including loss of use or the property." (Docs. 1-2 at 119 and 1-3 at 28). The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1-2 at 118 & 1-3 at 27).

Both policies contain an "Expected or Intended Injury" Exclusion, which provides:

This insurance does not apply to:

    **a. Expected Or Intended Injury**

        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(Docs. 1-2 at 106 & 1-3 at 14).

The CGL Policy also includes an endorsement titled "Employment-Related Practices Exclusion," identified as Form CGL 0641108, which excludes coverage as follows:

    A. The following exclusion is added to Paragraph 2,
       **Exclusions of Section 1 – Coverage A – Bodily Injury**
       **And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

    ….

6

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity;

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury; and

(4) To any allegation that the insured negligently or intentionally failed to advise others of a former employee's faults or characteristics, or was otherwise at fault in giving references regarding former employees.

. . . .

(*See* doc. 1-2 at 140-41).

The Umbrella Policy also excludes "Employment-Related Practices" by the following:

**2. Exclusions**

This insurance does not apply to:

….

**h. Employment-Related Practices**

"Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;
(b) Termination of that person's employment; or
(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies whether the injury-causing event described in

7

> Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person.
> This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury . . . .

(*See* doc 1-3 at 15).

### III. Analysis

Under Alabama law, "insurance contracts are subject to the same general rules applicable to other written contracts." *McKinnery v. Nationwide Mutual Fire Ins. Co.*, 33 So. 3d 1203, 1209 (Ala. 2009). The terms of an insurance policy are to be given a "rational and practical construction." *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 799 (Ala. 2002). A court is not to consider the language of the policy in isolation, but must consider "the policy as a whole." *Id.* Accordingly, "[i]f the policy is clear and unambiguous in its terms, then there is no question of interpretation or construction." *Id.* The "parties cannot create ambiguities by setting forth different interpretations or by inserting . . . strained or twisted reasoning." *State Farm Fire and Cas. Co. v. Wonderful Counselor Apostolic Faith Church*, 12 So. 3d 662, 665 (Ala. 2008).

Whether an insurance company owes its insured a duty to defend a suit against the insured is determined primarily by the allegations contained in the (underlying) complaint. *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985). An insurer is relieved from its duty to defend when the (underlying) complaint against the insured fails to allege a covered occurrence and the admissible evidence in the litigation fails to prove a covered occurrence. *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1065 (Ala. 2003).

### A. There is No Coverage Based on The Employment-Related Practices Exclusion

The Policies' Employment-Related Practices Exclusions provide that there is no coverage for "bodily injury" and "property damage" arising out of any "termination of that person's

8

employment" or "employment-related practices, policies, acts or omissions." Through their Answers to Plaintiffs' Complaint, Defendants admit Plaintiffs are entitled to a declaration of no coverage because the Employment-Related Practices Exclusions apply. (*See* docs. 9 at ¶¶ 1-2 and 22 at ¶¶ 3, 5).

This conclusion is supported by the fact that the Underlying Action arises out of Pinnacle Mfg.'s termination of Smith's employment as an independent sales agent and Smith's alleged economic injuries flowing from Pinnacle Mfg.'s employment-related actions and/or omissions towards Smith. (*See* doc. 1-1). The termination, and alleged economic injuries therefrom, triggers the Employment-Related Practices Exclusions. (Docs. 1-2 at 140-41 & 1-3 at 15). Therefore, Plaintiffs are not obligated to defend or indemnify the Pinnacle Defendants and they have no obligations to Smith.

### B. There is No Coverage Because No Occurrence, No Property Damage, or No Bodily Injury is Alleged in the Underlying Action

Through their Answer to Plaintiffs' Complaint, Defendants admit Plaintiffs are entitled to a declaration of no coverage because Smith alleges no occurrence, property damage, or bodily injury in the Underlying Action. (Docs. 9 at ¶¶ 1-2 & 22 at ¶¶ 3, 5). The Policies and the relevant law support this admission. The Policies only provide liability coverage for "bodily injury," "property damage," and "personal and advertising injury" caused by an "occurrence." (*See* docs. 1-2 at 105 & 1-3 at 13). None of these are alleged in the Underlying Action.[2]

#### 1. There is No Allegation of Occurrence in the Underlying Action

The Policies define "occurrence" as an "accident." (Docs. 1-2 at 118 & 1-3 at 27). The

---

[2] Additionally, to the extent coverage for Count II Suppression is not precluded based on the lack of such allegations, there is no coverage for Count II Suppression because the "Expected or Intended Injury" Exclusions and the Employment-Related Practices Exclusions (discussed herein) apply to bar coverage.

Alabama Supreme Court has described such language as meaning "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." *See Hartford Cas. Ins. Co. v. Merchants Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005).

Smith asserts a breach of contract claim in the Underlying Action, which does not constitute an occurrence. *See Thorn v. American States Ins. Co*., 266 F. Supp. 2d 1346, 1352 (M.D. Ala. 2002). There are no allegations of "bodily injury," "property damage," or "personal and advertising injury" caused by an accident in the Underlying Action. (*See* doc. 1-1). Only Count II Suppression alleges bodily injury, but it does not allege a "bodily injury" caused by an "accident" because the Pinnacle Defendants' actions were allegedly intentional. (*See id.*). *See Thorn*, 266 F. Supp. 2d at 1352. Accordingly, the Pinnacle Defendants are not entitled to coverage under the CGL or Umbrella Policies because there is no allegation of an "occurrence" in the Underlying Action.

### 2. There is No Allegation of Property Damage in the Underlying Action

The Policies define "Property Damage" as "physical injury to or destruction of real property or tangible personal property including loss of use of the property." (Docs. 1-2 at 119 & 1-3 at 28). In the Underlying Action, Smith makes claims for the recovery of purely economic losses, which, as a matter of law, do not fall within the definition of property damage. *See Am. States Ins. Co. v. Martin*, 662 So.2d 245, 249 (Ala. 1995), (holding that the loss of money does not qualify as property damage). Smith's request for damages for business losses, unpaid commissions and lost revenue are not based on "property damage." Accordingly, unless there is an allegation of "bodily injury" (which there is not), the Pinnacle Defendants are not entitled to coverage under the Policies because there is no allegation of "property damage" in the Underlying Action.

### 3. There is No Allegation of Bodily Injury in the Underlying Action, Except for in Count II Suppression

The Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. 1-2 at 117 & doc 1-3 at 26). While mental anguish or emotional distress may be considered bodily injury, Smith does not allege he sustained any such bodily injury in the Underlying Action, except for in Count II Suppression.[3] Instead, Smith seeks damages for business losses, unpaid commissions and lost revenue, which do not result from bodily injury.

Therefore, Plaintiffs are not obligated to defend or indemnify the Pinnacle Defendants and they have no obligations to Smith to the extent Smith's claims fail to allege claims seeking "property damage" or "bodily injury" caused by an occurrence.

### C. There is No Coverage Because the Expected or Intended Injury Exclusions Apply

The Policies contain an "Expected or Intended Injury Exclusion," which excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured. (Doc. 1-2 at 106 & Doc 1-3 at 14). Through their Answers to Plaintiffs' Complaint, Defendants admit Plaintiffs are entitled to a declaration of no coverage because the "Expected or Intended Injury Exclusions" apply. (Docs. 9 at ¶¶ 1-2 & 22 at ¶¶ 3, 5).

In the Underlying Action, Smith alleges the Pinnacle Defendants intentionally interfered with Smith's business relations with his existing customers by engaging them while Smith was still an independent sales agent for Pinnacle Mfg. and/or after the termination of his employment as an independent sales agent for Pinnacle Mfg. (Doc. 1-1). Based on these allegations, the Pinnacle Defendants knew their engagement with Smith's customers would cause injury to Smith,

---

[3] As noted throughout, the Polices excludes coverage for Count II Suppression for other reasons discussed herein.

and there is no coverage under the Policies for Smith's claims because the crux of Smith's claims is based on the Pinnacle Defendants' intentional conduct. *See e.g., State Auto. Prop. & Cas. Ins. Co. v. Calhoun*, N. 2:05-CV-122-F, 2005 WL 2406055 (M.D. Ala. Sept. 29, 2005)

### D. There is No Duty to Indemnify the Pinnacle Defendants in the Underlying Action

Alabama case law provides that an insurer's duty to defend is broader than its duty to indemnify. *See e.g., Universal Underwriters Ins. Co. v. Youngblood*, 549 So. 2d 76 (Ala. 1989). Because the duty to defend is broader than the duty to indemnify, no duty to indemnify exists where there is no duty to defend. *Employers Mut. Cas. Co. v. Evans*, 76 F. Supp. 2d 1257 (N.D. Ala. 1999). Because, as thoroughly discussed above, Plaintiffs have no duty to defend the Pinnacle Defendants, there is no duty to indemnify the Pinnacle Defendants.

### IV. Conclusion

Based on the undisputed pleadings and analysis above, Plaintiffs have no duty to defend or indemnify the Pinnacle Defendants in the Underlying Action and have no obligations as to Smith. The motion for judgment on the pleadings (doc. 23), is **GRANTED**. A separate order will be entered.

DONE this 9th day of July, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE